DECISION AND JUDGMENT ENTRY
{¶ 1} This cause comes on appeal from the Wood County Court of Common Pleas. Appellant, Altagracia Ybarra, filed a claim for damages incurred when a sheriff's cruiser driven by Leonard L. Vidra ("Vidra") collided with appellant's car while Vidra was responding to an emergency call. The trial court granted summary judgment to Vidra and the Wood County Commissioners, appellees, on grounds of statutory immunity. For the following reasons, we affirm.
 {¶ 2} Vidra is a deputy sheriff employed by the Wood County Sheriff's Office. On September 1, 2001, Vidra was patrolling in a sheriff's cruiser in Rossford, Ohio. At approximately 11:00 a.m. he received a 911-emergency dispatch regarding a domestic dispute in Lucky, Ohio. Vidra responded to the emergency call and proceeded south on Glenwood Road with lights and sirens activated. The posted speed limit for that section of Glenwood Road was 35 m.p.h.; Vidra testified that he was traveling approximately 40 m.p.h. As Vidra approached the intersection of Glenwood Road and Buck Road, he saw that the stoplight against him was red. Several other cars had pulled to the side of Glenwood Road. Vidra testified that he looked for oncoming and cross traffic, observed that several cars along the intersection had stopped in response to his lights and sirens, and proceeded through the intersection. Vidra testified that he had slowed to travel through the intersection at approximately 10 m.p.h.; eyewitnesses testified that Vidra did not slow down on approaching the intersection and traveled into the intersection at approximately 45 m.p.h.[1]
 {¶ 3} Appellant was traveling west on Buck Road, with the green light in her favor as she approached the intersection at Glenwood. The posted speed limit on Buck Road was 35 miles per hour and appellant testified that she was traveling approximately 30 to 35 m.p.h. Appellant testified that she did not see the police cruiser's lights or hear its siren, and she proceeded through the intersection unaware of Vidra's approach. Appellant and Vidra collided in the intersection. Appellant sustained physical injuries, and both vehicles were disabled. No evidence indicated which vehicle hit whom.
 {¶ 4} Appellant claimed that the Wood County Commissioners ("commissioners") were liable for Vidra wantonly and recklessly passing through the intersection against the red light, and that Vidra was also individually liable. Appellant also claimed the commissioners were negligent in entrusting Vidra with a police cruiser. The trial court dismissed appellant's complaint against the commissioners for negligent entrustment, and appellant does not appeal that ruling. After some discovery, both appellees moved for summary judgment on the remaining claim.
 {¶ 5} The trial court granted appellees' motion for summary judgment on all claims. The trial court found that the commissioners and Vidra individually retained their statutory immunity from tort liability. From that adverse judgment, appellant brings the following assignment of error:
 {¶ 6} "The trial court erred in granting summary judgment to defendants by finding that they are entitled to immunity under the highly disputed facts of this case."
 {¶ 7} An appellate court reviews a grant of summary judgment with the same standard as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Pursuant to Civ.R. 56, a trial court is required to construe the evidence in a light most favorable to the non-moving party, determine whether any genuine issues of material fact exist, and determine whether reasonable minds could differ as to whether judgment should be entered against the non-moving party. Civ.R. 56(C). An appellate court, reviewing a grant of summary judgment, also examines the record in the light most favorable to the party opposing the motion.Engel v. Corrigan (1983), 12 Ohio App.3d 34, paragraph one of the syllabus. Thus, a reviewing court will find summary judgment to be proper when reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 8} Political subdivisions are generally immune from tort liability for any act or omission of the subdivision or its employees in connection with a governmental function. R.C. 2744.02(A)(1). The Wood County Commissioners constitute a political subdivision as defined by R.C.2744.01(F). The commissioners' statutory immunity may be abrogated if one of the statutory exceptions to immunity applies. R.C. 2744.02(B). If the political subdivision's immunity is lost through an exception, the political subdivision may then assert one of the statutory defenses to liability contained in R.C. 2744.02(B)(1)(a)-(c).
 {¶ 9} At issue here is the exception to immunity under which a political subdivision is liable for "injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." R.C. 2744.02(B)(1).
 {¶ 10} Vidra was undisputedly acting within the scope of his employment when the collision occurred. However, the commissioners may still retain immunity if Vidra was "responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." R.C. 2744.02(B)(1)(a). Thus, appellant must raise a factual issue relevant to more than simple negligence in order to avoid summary judgment. A court may determine whether conduct is willful or wanton as a matter of law, and such determination is made considering the totality of the circumstances. Reynolds v. City of Oakwood (1987),38 Ohio App.3d 125, 127.
 {¶ 11} A similar analysis of immunity and the exception applies to Vidra in his individual capacity. A political subdivision's employees enjoy a statutory privilege of immunity from tort liability for acts or omissions within the scope of his employment, unless the act or omission was done "with malicious purpose, in bad faith, or in a wanton and reckless manner." R.C. 2744.03(A)(6)(b).
 {¶ 12} Turning first to an analysis of the commissioners' immunity, the parties do not dispute that Vidra was engaged in responding to an "emergency call" as defined in R.C. 2744.02; thus, that element of R.C.2744.02(B)(1)(a) has been met. In order to avoid summary judgment, appellant must advance a disputed fact relevant to a determination of whether Vidra's conduct was willful or wanton.
 {¶ 13} Appellant argues that Vidra owed a duty of care to her and surrounding motorists pursuant to R.C. 4511.03. That statute allows emergency vehicles or public safety vehicles to pass through a red or stop signal when responding to an emergency call. It states in relevant part: "The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway." R.C.4511.03(A).[2]
 {¶ 14} We agree with the trial court, that, even assuming Vidra violated R.C. 4511.03(A), a breach of a statutory duty of care does not, without more, amount to reckless or wanton misconduct. "[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tort-feasor." Roszman v.Sammett (1971), 26 Ohio St.2d 94, 96-97. Although a sound argument may support a conclusion that Vidra was negligent, nothing in the record indicates that Vidra possesses a disposition to perversity.
 {¶ 15} "Wanton misconduct" is a failure "to exercise any care whatsoever * * * under circumstances in which there is great probability that harm will result." Hawkins v. Ivy (1977), 50 Ohio St.2d 114, syllabus. We also recognize that a grant of summary judgment is unsupportable solely by the converse of that proposition, "that the presence of any care whatsoever will preclude a finding of wanton misconduct." Reynolds v. City of Oakwood (1987), 38 Ohio App.3d 125,127.
 {¶ 16} Construing all inferences in favor of appellant, we can state as a matter of law that Vidra's conduct did not rise to the level required to abrogate appellees' immunity. Although the parties disagree as to whether Vidra slowed as he approached the intersection and to what speed he slowed, this dispute is outweighed by the totality of the circumstances. Other relevant aspects, considered collectively, preclude a finding that reasonable minds could differ as to Vidra's conduct: the cruiser's lights and sirens were engaged; other drivers near the intersection saw the cruiser's approach and pulled their vehicles to the side; weather conditions were optimal for seeing or hearing his approach; and Vidra's (assumed top) speed through the intersection at45 m.p.h. in a 35 m.p.h. zone.
 {¶ 17} Similar disputed issues of fact existed in Leach v. City ofToledo (January 22, 1999), 6th Dist. No. L-98-1227. In Leach, the police officers asserted they were traveling at 45 m.p.h. in a 25 m.p.h. zone and that they slowed at all intersections; the plaintiff injured in a collision with said officers presented eyewitness testimony that the officers' speed exceeded 60 miles per hour. The disputed speed of the vehicles was a "conclusory allegation * * * insufficient to create a question of fact." Id. at 10. Vidra's top alleged speed was 45 m.p.h. in a 35 m.p.h. zone — a less conspicuous difference.
 {¶ 18} The parties' dispute as to whether Vidra slowed and his actual speed does not, therefore, preclude a grant of summary judgment. Only disputes over facts that might affect the outcome of a suit under governing law will properly preclude summary judgment. Irrelevant and unnecessary factual disputes will not be counted. Id. at 6, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248. Since appellant has not raised a genuine issue of fact as to whether Vidra's conduct was wanton or willful, summary judgment for the commissioners was proper.
 {¶ 19} The same analysis applies with respect to Vidra's personal liability. The absence of willful or wanton misconduct as defined in R.C. 2744.02, which establishes the commissioners' immunity, also meets the standard for personal immunity pursuant to R.C. 2744.03(A)(6)(b). This conclusion holds notwithstanding the slightly different standard of "recklessness" in that section. Byrd v. Kirby et al., 10th Dist. No. 04AP-451, 2005-Ohio-1261, at ¶ 27. By eliminating immunity for acts of "recklessness," the statute intends to hold culpable those who have a "perverse disregard of a known risk." Lipscomb v. Lewis (1993),85 Ohio App.3d 97, 102. As in Lipscomb v. Lewis, id., the mere allegation that Vidra could have slowed more does not indicate a perverse disregard of a known risk. This allegation simply advocates holding Vidra, as an officer engaged in responding to an emergency call, to a standard of care greater than that for which the statute allows. Thus, Vidra was also properly granted summary judgment on the grounds of immunity.
 {¶ 20} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed. Costs to appellant. App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.
[1] "Eyewitnesses" refers to witnesses who testified at Vidra's trial for a traffic violation during the same event at issue.
[2] Effective January 1, 2004, the statute was amended to include section (B), which provides criminal penalties for violating section (A).